# IN THE SUPREME COURT, STATE OF WYOMING

## 2014 WY 53

APRIL TERM, A.D. 2014

*April 23, 2014*

RENE VARGAS,

Appellant
(Defendant),

v.

S-13-0084

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Carbon County*
*The Honorable Wade E. Waldrip, Judge*

*Representing Appellant:*

Office of the State Public Defender:  Diane Lozano, State Public Defender; Tina N. Olson, Chief Appellate Counsel; and David E. Westling, Senior Assistant Appellate Counsel.  Argument by Mr. Westling.

*Representing Appellee:*

Peter K. Michael, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; and Jennifer Zissou, Assistant Attorney General.  Argument by Ms. Zissou.

*Before KITE, C.J., and HILL, BURKE, DAVIS, and FOX, JJ.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**HILL,** Justice.

[¶1]    Rene Vargas was found guilty of two counts of conspiracy to deliver a controlled substance and two counts of conspiracy to take a controlled substance into a state penal institution.  On appeal he contends that his right to speedy trial was violated and that the district court abused its discretion when it denied his motion to continue.  We affirm.

## ISSUES

[¶2]    Vargas presents two issues on appeal:

> 1.  Was Mr. Vargas denied a right to a speedy trial due to the fact that the time between his arraignment and trial was 201 days, in violation of the protections afforded by W.R.Cr.P. 48?
>
> 2.  Did the trial court abuse its discretion by denying Mr. Vargas's motion for continuance without good cause and thereby denying Mr. Vargas an opportunity to prepare for trial?

## FACTS

[¶3]    Rene Vargas was an inmate at the Wyoming State Penitentiary (WSP).  WSP personnel began suspecting that during communications between Vargas and his ex-wife, Angeline Vargas (Angeline), the two were facilitating bringing controlled substances onto prison grounds.  After monitoring their communications for some time, WSP personnel requested the assistance of the Wyoming Division of Criminal Investigation (DCI).  During a visit from Angeline, DCI investigators pulled her aside for questioning.  She admitted upon questioning that Vargas requested her to bring marijuana and morphine into the prison and deliver it to him during their visits.  She admitted smuggling controlled substances into the prison on previous occasions, again at Vargas's request.

[¶4]    In an information filed December 29, 2011, Vargas was charged with two counts of conspiracy to deliver a controlled substance and two counts of conspiracy to take a controlled substance into a state penal institution.  Vargas filed a speedy trial demand on March 1, 2012 which the court granted and then set trial for August 14, 2012.  However, on July 31, 2012, due to a burdensome trial docket, the court reset Vargas's trial for October 9, 2012, specifically citing to W.R.Cr.P. 48(b)(4)(B)(iii).  There was no objection to the continuance.

[¶5]    Angeline also faced charges, and both she and Vargas were appointed public defenders.  Throughout his representation Vargas made complaints about his attorney alleging his public defender had a conflict of interest because she was under the influence

of the separate public defender assigned to Angeline.  At a hearing addressing this alleged conflict Vargas's attorney assured the court that her work product was separate from her co-workers and that she had no reason to believe she could not effectively represent Vargas.  Accordingly, the district court declined to appoint Vargas a new attorney.  Despite this ruling Vargas continued his complaints regarding his public defender.  Unable to determine any inadequacy and lacking any solid reason from Vargas, the court continued to decline his request for new counsel.  Regardless, a week prior to his trial Vargas sought permission from the court to proceed *pro se*.  He also requested a continuance to allow him to prepare for trial.  Before granting Vargas's request to represent himself, the court inquired of his education and advised that self-representation would be a "big mistake."  The court allowed Vargas to proceed *pro se* concluding that he "(1) unequivocally and timely asserted his constitutional right to represent himself, (2) knowingly and intelligently waived his constitutional right to counsel and (3) has thus far not engaged in conduct that would prevent a fair and orderly trial."  Vargas's request for a continuance of the trial date was denied.

[¶6]    After a two-day trial a jury convicted Vargas on all counts.  The district court sentenced Vargas to seven to ten years on counts one and three and two to three years on counts two and four, to be served concurrently.  Vargas timely appealed.

## DISCUSSION

### *Speedy Trial*

[¶7]    Vargas first claims on appeal that he was denied his right to speedy trial because the time between his arraignment and trial was 201 days, in violation of W.R.Cr.P. 48.  The State contends that this Court has recognized that such a delay is part of the due administration of justice and thus does not violate W.R.Cr.P. 48.  We agree with the State and explain below.

[¶8]    We review the constitutional question of whether a defendant has been denied a speedy trial in violation of the Sixth Amendment to the United States Constitution *de novo.  Potter v. State*, 2007 WY 83, ¶ 14, 158 P.3d 656, 660 (Wyo. 2007).  This Court also reviews purported violations of the right to speedy trial to ensure that the mandates of Rule 48 and constitutional guarantees have been met.  *Berry v. State*, 2004 WY 81, ¶ 17, 93 P.3d 222, 227 (Wyo. 2004).

[¶9]    W.R.Cr.P. 48(b) requires that a criminal charge be brought to trial within 180 days following arraignment unless continued as allowed by the rule.  The rule allows the trial to be held beyond that period if "[r]equired in the due administration of justice and the defendant will not be substantially prejudiced" by the delay.  W.R.Cr.P. 48(b)(4)(B)(iii).  This Court has held that the need for the court to adjust a crowded docket is within the administration of justice.  *See Seteren v. State*, 2007 WY 144, 167 P.3d 20 (Wyo. 2007).

2

Additionally, Vargas has not shown that he was prejudiced by the delay, did not object to the delay, and contrary to his assertion, he was not entitled to be personally present at the hearing during which the court ordered the continuance. This Court has previously stated:

> "The Sixth Amendment and the due process clauses of the Fifth and Fourteenth Amendments to the Constitution of the United States are held to guarantee an accused the right to be present during every stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." *Seeley v. State,* 959 P.2d 170, 177 (Wyo. 1998). The constitutional guarantee has been embodied into Wyo. Stat. Ann. 7-11-202 and W.R.Cr.P. 43(a). *Id.* In none of these laws is it mandated that a defendant be present at a continuance hearing, and we are not provided with any authority that Hauck's presence was constitutionally required.

*Hauck v. State,* 2001 WY 119, ¶ 18, 36 P.3d 597, 602 (Wyo. 2001).

[¶10] Compliance with Rule 48 answers only part of any constitutional speedy trial question. We must also apply the four-part test articulated by the United States Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 530-31, 92 S.Ct. 2182, 2192-93, 33 L.Ed.2d 101 (1972). That analysis requires us to balance: (1) The length of the delay; (2) the reason for the delay; (3) the defendant's assertion of the right; and (4) the prejudice to the defendant. *Seteren*, ¶ 10, 167 P.3d 23. Again, as to the length of the delay, we conclude that the delay did not violate Vargas's constitutional right to a speedy trial. First, the clock starts running earlier on the constitutional speedy trial right and thus the delay here is calculated at 285 days from December 29, 2011, when the State filed its information to the start date of Vargas's trial on October 10, 2012. The reasons for the delay, as stated heretofore, were due to the court's busy docket and only amounted to a delay of 56 days from the original trial date to the actual trial date. Although the delay to accommodate the court's docket can weigh against the State, Vargas has not shown that he was prejudiced by that delay.

[¶11] Vargas did not object to the delay under the third *Barker* factor – he did not vocalize or file a written objection to the continuance, nor did he demand speedy trial after the resetting of the trial date. In fact, he requested a 30-day continuance which the court denied. Less than vigorous assertions weigh against a speedy trial claim. *Campbell v. State,* 999 P.2d 649, 656 (Wyo. 2000).

[¶12] Fourth and finally, we find no prejudice to Vargas by the delay. We first note that delay was not presumptively prejudicial. *See Mascarenas v. State*, 2013 WY 163, ¶ 13, 315 P.3d 656, 661 (Wyo. 2013) (a delay of 332 days is not presumptively prejudicial). Thus, the burden rests with Vargas to show prejudice, which may include (1) lengthy pretrial incarceration; (2) pretrial anxiety; and (3) impairment of the defense. *Berry v.*

*State,* 2004 WY 81, ¶ 46, 93 P.3d 222, 237 (Wyo. 2004). Given that Vargas had just completed a lengthy prison sentence, and that nothing in the record exists to suggest an inordinate amount of pretrial anxiety, no prejudice exists as to those points. Regarding the impairment of the defense, which is the most serious of the prejudice factors, we do not see any occurrence of that in this instance. "This inquiry is designed to prevent a defense from becoming impaired by death, disappearance, or memory loss of witnesses for the defense[.]" *Miller v. State,* 2009 WY 125, ¶ 45, 217 P.3d 793, 806 (Wyo. 2009) (citing 5 Wayne R. LaFave, *Criminal Procedure* § 18.2(e), at 131 n.81 (3d ed. 2007)). Vargas fails to demonstrate prejudice in this instance. We thus conclude there was no violation of Vargas's right to speedy trial.

***Request for Continuance***

[¶13] Vargas's final argument on appeal is that the district court abused its discretion when it denied his motion for continuance. Vargas contends that the court denied his motion without good cause.

[¶14] Our standard of review of a denial of a motion for continuance is well-settled:

> We have consistently held that the grant or denial of a motion for continuance is a discretionary ruling of the district court and, unless a clear showing of an abuse of discretion resulting in manifest injustice has been shown by the challenging party, we will not disturb that ruling. *Sincock v. State*, 2003 WY 115, ¶ 25, 76 P.3d 323, 333-34 (Wyo. 2003); *Clearwater v. State*, 2 P.3d 548, 553 (Wyo. 2000). The determination of whether the district court abused its discretion in refusing to grant a continuance is highly dependent upon the facts and circumstances of the individual case. *Sincock*, ¶ 25, 76 P.3d at 333. On review, our primary consideration is the reasonableness of the district court's decision. *Id*.

*Grady v. State*, 2008 WY 144, ¶ 18, 197 P.3d 722, 729 (Wyo. 2008).

[¶15] Vargas complains that his motion for continuance was denied "for no reason." However, when put in the context of his filings and case overall, we conclude that the district court was within reason in its denial. To explain, we review in part this case's procedural history regarding Vargas's representation.

[¶16] Vargas first complained about his attorney on April 23, 2012, four months before trial was scheduled to begin. His next attorney complaint was lodged on May 9, 2012, and a hearing was scheduled for July 17, 2012. However, he was unable to articulate why

4

his attorney was unsatisfactory, and at that point Vargas decided to "stick with her." Two weeks prior to trial Vargas asserted his right to self-representation, which the district court granted after warning him of the dangers of proceeding *pro se.* We recently stated that:

> A defendant's Sixth Amendment right to counsel does include the right to be represented by an attorney of the defendant's own choice. *Irvin*, 584 P.2d at 1070 (citing *Chandler v. Fretag*, 348 U.S. 3, 75 S.Ct. 1, 99 L.Ed. 4 (1954)). That right is not, however, without limits. The United States Supreme Court has recognized "a trial court's wide latitude in balancing the right to counsel of choice against the needs of fairness and against the demands of its calendar." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 152, 126 S.Ct. 2557, 2565-66, 165 L.Ed.2d 409 (2006) (citations omitted). We agree with the following factors enumerated by the Tenth Circuit for balancing a defendant's right to retain counsel of choice against the needs of fairness and a court's administration of justice:
>
> > In weighing this balance, courts may consider whether a continuance to allow one's preferred attorney to handle the case "would inconvenience witnesses, the court, counsel, or the parties; whether other continuances have been granted; whether legitimate reasons exist for the delay"; or whether the defendant contributed to the circumstances which gave rise to the request for a continuance. *United States v. Kelm*, 827 F.2d 1319, 1322 n.2 (9th Cir. 1987). Similarly, courts may consider whether defendant has other competent counsel prepared to try the case, with attention to whether defendant obtained the other counsel as lead or associate counsel; whether rejecting defendant's request for delay will result in identifiable prejudice to his case; whether this prejudice constitutes a material or substantial harm; and whether the complexity of the action or other relevant factors peculiar to the specific case necessitates further delay. *United States v. Burton*, 584 F.2d 485, 491, 189 U.S. App. D.C. 327 (D.C. Cir. 1978), *cert. denied*, 439 U.S. 1069, 99 S. Ct. 837, 59 L. Ed. 2d 34 (1979).
>
> *Mendoza-Salgado*, 964 F.2d at 1016; *see also Shipman*, ¶ 20, 17 P.3d at 38 (upholding denial of continuance where new

counsel entered case knowing trial date had been scheduled for months and concluding that "Appellant's decision to add additional counsel at that late date should not require the court to further delay the trial"); *Irvin*, 584 P.2d at 1073-74 (upholding denial of continuance to allow defendant to prepare to proceed *pro se* where no justification was shown for discharge of public defender, defendant was dilatory in making request, and defendant made no showing he was denied a fair trial); *Ash*, 555 P.2d at 224-25 (upholding denial of continuance and citing defendant's lack of diligence in retaining counsel and lack of prejudice to defendant by denial of continuance).

*Secrest v. State,* 2013 WY 102, ¶ 16, 310 P.3d 882, 886 (Wyo. 2012).

[¶17]  When taking the above into consideration, we conclude that the district court did not abuse its discretion when it denied Vargas's motion to continue.  Vargas had the burden of coming forward with a reason for his delay in requesting a continuance.  He did not meet that burden and, as such, the court did not abuse its discretion.  What is more, we cannot help but point a finger to Vargas and his own contribution to the circumstances which gave rise to the request for a continuance.  Although he had taken issue with his appointed counsel for months before the trial, he waited until two weeks before trial to assert his right to self-representation.  His complaints regarding his attorney failed to provide sufficient evidence justifying the public defender's dismissal.  Contrary to warnings from the court about proceeding *pro se*, Vargas chose that route with only one week left before trial.  Under those circumstances, the district court did not find justification for a continuance and neither does this Court find that the district court abused its discretion.

## CONCLUSION

[¶18]  Vargas's right to speedy trial was not violated under the constitution or W.R.Cr.P. 48.  Also, the district court did not abuse its discretion when it denied Vargas's motion for continuance.  We affirm.

6