KAUTZ, Justice.
[¶ 1] The State charged Paul D. Mathewson with fraudulently altering a government record, claiming he altered a bond order. The district court found him guilty after a bench trial. On appeal, Mr. Mathewson claims the bond order was not a government record. Further, Mr. Mathewson contends the State's evidence was insufficient to show he had the requisite specific intent when he altered the document.
[¶ 2] We affirm.
ISSUES
[¶ 3] Mr. Mathewson raises the following issues on appeal:
1. Did a printed copy of an unsigned and unfiled bond form qualify as a government record, as defined by Wyo. Stat. Ann. § 6-3-604(b) (LexisNexis 2017)?
2. Did Mr. Mathewson possess the requisite intent to commit a violation of Wyo. Stat. Ann. § 6-3-604(a)(ii) when he altered the copy of the bond condition order?
FACTS
[¶ 4] On June 23, 2016, Mr. Mathewson was arraigned for failing to appear on a trespassing ticket. The magistrate ordered that Mr. Mathewson could be released on a $2,000 cash bond, and signed a bond order to that effect. Because the magistrate presided over the arraignment remotely, he sent two copies of the signed bond order to the Hot Springs County Circuit Court; the first electronically via e-mail and the second by mail. The order stated the bond amount to be paid and that it could only be paid in cash. The order also included a line on which Mr. Mathewson needed to sign and provide his address as an acknowledgment of his understanding of those conditions. After receiving *1123 the order via e-mail, the circuit court clerk printed a copy, file stamped it, and took it to the Hot Springs County jail where Mr. Mathewson was being held to obtain his signature.
[¶ 5] The clerk delivered the bond order to a deputy sheriff at the jail who witnessed Mr. Mathewson sign it. While signing the order, Mr. Mathewson also checked a box marked "Acceptable Bail Bond." Checking this box indicates that the defendant could contract with an approved bondsman to satisfy the condition rather than paying the bond in cash. The magistrate had not checked this box because the bond order required a cash payment of the entire $2,000. Mr. Mathewson returned the bond order to the deputy who then made a copy and returned the original to the clerk.
[¶ 6] Ordinarily, the clerk would have then placed the document in the file as part of the permanent record. However, the clerk noticed that the additional box had been checked and compared it to the original sent via e-mail. The clerk then contacted the sheriff's department to report the discrepancy.
[¶ 7] The State charged Mr. Mathewson with fraudulently altering a government record in violation of § 6-3-604 :
(a) A person is guilty of a felony punishable by imprisonment for not more than ten (10) years, a fine of not more than ten thousand dollars ($10,000.00), or both, if he fraudulently steals, alters, defaces, destroys or secretes:
...
(ii) A part or all of a government record.
(b) As used in this section, "government record" means a record, record book, docket or journal which is authorized by law or belongs or pertains to, or is filed with, a court of record, a circuit court or any governmental office or officer.
Mr. Mathewson waived his right to a jury trial, and the case proceeded to a bench trial. The district court found Mr. Mathewson guilty. Mr. Mathewson filed a timely notice of appeal.
DISCUSSION
Was the bond order a government record?
[¶ 8] Mr. Mathewson claims he did not violate § 6-3-604 because the bond order he altered was not a government record as defined by statute. His argument requires that we construe the definition of a government record as found in the statute.
[¶ 9] We review issues of statutory construction de novo. Adekale v. State , 2015 WY 30, ¶ 12, 344 P.3d 761, 765 (Wyo. 2015).
The plain, ordinary, and usual meaning of words used in a statute controls in the absence of clear statutory provisions to the contrary. Where there is plain, unambiguous language used in a statute there is no room for construction, and a court may not look for and impose another meaning. Where legislative intent is discernible a court should give effect to the 'most likely, most reasonable, interpretation of the statute, given its design and purpose.'
Id. (citations omitted).
[¶ 10] When construing a statute, we do not add language or choose other words to change the meaning of a statute. Id. ; Stutzman v. Office of Wyo. State Eng'r , 2006 WY 30, ¶¶ 14-16, 130 P.3d 470, 475 (Wyo. 2006).
[¶ 11] Mr. Mathewson argues that for a document to be considered a "government record," it must be filed with the court and in its final form. However, this interpretation is not supported by the plain and unambiguous definition of "government record" contained in the charging statute. "As used in this section, 'government record' means a record, record book, docket or journal which is authorized by law or belongs or pertains to, or is filed with, a court of record, a circuit court or any governmental office or officer. " Section 6-3-604(b) (emphasis added).
[¶ 12] The bond order in question falls squarely within this definition. Black's Law Dictionary defines a 'record' as a documentary account of past events, designed to memorialize those events. Black's Law Dictionary 1465 (10th ed. 2014). As the bond order's purpose was to record and memorialize the bond conditions set by the magistrate judge, *1124 it clearly was a record, even before Mr. Mathewson signed it and before it was physically placed in the court file.
[¶ 13] Section 6-3-604(b) requires that in addition to being a record, the document must also have had a specified relationship with the court in order to qualify as a "government record." The statute describes three distinct relationships to the court, any one of which would be sufficient for the document to become a government record. Under the statute, to constitute a government record, a record must be (1) authorized by law; (2) belong or pertain to a court of record; or (3) filed with a court of record. Id. This bond order was both authorized by law and belonged to and pertained to the circuit court. The bond order was authorized by law when the magistrate signed it, certifying that it accurately reflected the conditions that were orally explained to Mr. Mathewson at his arraignment. W.R.Cr.P. 46.1(e) specifically authorizes and requires a judicial officer to issue a written bond (or release) order such as this one. Additionally, the order obviously pertained to and belonged to the circuit court as it was issued by the court magistrate, file stamped by the clerk of court, and was intended to be used to officially establish Mr. Mathewson's pretrial release conditions and his acknowledgement of those conditions. Mr. Mathewson's contention that the bond order was not a government record until after he signed it and it was physically placed in the court file acknowledges only the "filed with a court" alternative under the statute and ignores the plain language of the statute which provides two other ways of creating a government record.
Sufficiency of the Evidence
[¶ 14] Mr. Mathewson also claims that the State did not provide sufficient evidence to show that he acted with the specific intent required by § 6-3-604. The statute provides that a defendant is guilty of a felony only if he "fraudulently" alters a government record. It requires more than just the act of alteration, it requires a particular intent - a fraudulent one - on the part of the one making the alteration. Consequently, the crime is known as a "specific intent" crime.
'When the definition refers to defendant's intent to do some further act or achieve some additional consequence, the crime is deemed to be one of specific intent.' " People v. Love, 111 Cal.App.3d Supp. 1, 168 Cal.Rptr. 591, 600 (1980).
"A specific intent crime is one in which a particular intent is a necessary element of the crime itself." Russell v. State, Fla.App., 373 So.2d 97, 98 (1979).
Dean v. State, 668 P.2d 639, 642 (Wyo. 1983) (emphasis omitted). See also, Cox v. State, 829 P.2d 1183, 1185 (Wyo. 1992) ; Dorador v. State, 573 P.2d 839 (Wyo. 1978).
[¶ 15] In reviewing a claim that the evidence was not sufficient to support a guilty verdict after a bench trial, we apply the same standards as for reviewing a verdict after a jury trial. Faubion v. State, 2010 WY 79, ¶ 12, 233 P.3d 926, 929 (Wyo. 2010) ; Tennant v. State, 776 P.2d 761, 763 (Wyo. 1989).
We examine and accept as true the State's evidence and all reasonable inferences which can be drawn from it. We do not consider conflicting evidence presented by the defendant. We do not substitute our judgment for that of the jury; rather, we determine whether a jury could have reasonably concluded each of the elements of the crime was proven beyond a reasonable doubt. This standard applies whether the supporting evidence is direct or circumstantial.
Mraz v. State, 2016 WY 85, ¶ 18, 378 P.3d 280, 286 (Wyo. 2016) (citations omitted).
[¶ 16] The question for this Court is not whether the evidence was sufficient to establish guilt beyond a reasonable doubt, rather it is whether the evidence could reasonably support such a finding by the factfinder. Id., ¶ 19, 378 P.3d at 296.
[¶ 17] Mr. Mathewson relies first on the definition of "fraudulently" found in the Wyoming Criminal Pattern Jury Instructions: "Within the context of the statute the term 'fraudulently' could be defined, or expanded upon, to include the notion that the act is done with the intention to deprive another or secure an advantage ." W.Cr.P.J.I., § 36.04(a), Use Note (2009) (emphasis added). Mr. Mathewson argues that the only *1125 evidence the State provided of his intent was the checked box on the copied form itself, and this alone is insufficient to prove he intended to secure an advantage at the time he checked the box. Mr. Mathewson's primary contention is that, because he never attempted to gain release by posting a surety bond, there was insufficient evidence that he had the requisite specific intent. He argues further that even if he had attempted to post a surety bond, it would not have been accepted because no one was under the impression that he was privileged to post a surety bond. Therefore, his alteration to the bond order could not have affected his release.
[¶ 18] This argument fundamentally misunderstands both the nature of fraud and the mens rea element of a crime. In Cronin v. State, 678 P.2d 370, 371 (Wyo. 1984), this Court held that "where fraud is an element of a statutory crime, the result of the fraudulent misrepresentation is the same whether the person upon whom the defendant works his or her wiles relies upon the misrepresentations or not." We echoed that holding in Smith v. State, 721 P.2d 1088 (Wyo. 1986) wherein the appellant argued that even if he made false statements, his conviction could not be upheld absent a showing by the State that those statements were relied upon. We held that because the statute in that case made no mention of reliance on the misrepresentation as an element of the crime, a lack of reliance could not protect the defendant. Id. at 1092. The same is true here. Section 6-3-604 does not make reliance on the defendant's misrepresentation an element of the crime. Mr. Mathewson's conduct after altering the bond condition order is irrelevant; instead, the focus is on his mental state at the time he made the alteration.
[¶ 19] The State offered sufficient evidence to show Mr. Mathewson had the requisite fraudulent intent. "The State may prove specific intent by the permissible means of inference from circumstantial evidence." Leavitt v. State, 2011 WY 11, ¶ 11, 245 P.3d 831, 833 (Wyo. 2011). The circumstantial evidence in this case is sufficient to demonstrate that by altering the bond order Mr. Mathewson acted fraudulently, that is, he intended to gain something he was not entitled to.
[¶ 20] The act of checking the box itself provides evidence of Mr. Mathewson's intent. A reasonable finder of fact would have considered why that alteration was made in the first place. The evidence showed that if no one had noticed the change he made, Mr. Mathewson could have obtained pretrial release on terms he was not entitled to. Rather than obtaining and submitting the $2,000 in cash, Mr. Mathewson changed the conditions so that he could pay a smaller fee to a bail bondsman and gain his release. Together, this evidence is enough for a reasonable finder of fact to conclude that Mr. Mathewson's intent at the time he made the alteration was to secure the advantage associated with that alteration.[1]
[¶ 21] Finally, Mr. Mathewson concedes he checked the box, but argues that he could not have satisfied the actus reus of the crime because he was instructed to modify the document when he was asked to sign it. His contention is that when he was asked to sign the document, he was given authority to modify it and checking the box fell under that same authority. Mr. Mathewson provides no legal support for this argument. This Court has consistently held that we will not consider arguments so lacking cogence and entirely devoid of citation to supporting legal authority as this one.
*1126 Teniente v. State, 2007 WY 165, ¶ 75, 169 P.3d 512, 533 (Wyo. 2007).
CONCLUSION
[¶ 22] Section 6-3-604 includes a plain and unambiguous definition of a government record. That definition encompasses the bond order altered by Mr. Mathewson in this case. Additionally, based on the evidence provided by the State and the irrelevance of Mr. Mathewson's actions after he made the alteration, it was reasonable for the finder of fact to conclude Mr. Mathewson had the requisite specific intent to act fraudulently - to secure an advantage he was not entitled to - when he committed the act.
[¶ 23] Affirmed.

The State also relies on statements it claims Mr. Mathewson made at his arraignment for the current charge regarding anxiety he felt as a result of the multiple cash bonds he had to post in various proceedings. We will not rely on this information or any inferences that can be drawn from it for two reasons. First, Mr. Mathewson did not himself make these statements at the arraignment as the State suggests. His attorney discussed the anxiety as part of an argument to reduce the bail amount. Second, when considering the sufficiency of the evidence, it is inappropriate to rely on information that was not admitted as evidence at trial. In a jury trial, the jury would not have been privy to statements made at the arraignment unless those statements were introduced in the trial. "The function of the finder of fact in cases tried to a court is identical to that in cases tried to juries, and the same rules are applicable with respect to the standards and principles applied in appellate review." Fitzgerald v. State, 599 P.2d 572, 574 (Wyo. 1979).