# IN THE SUPREME COURT, STATE OF WYOMING

## 2024 WY 60

APRIL TERM, A.D. 2024

June 10, 2024

AUDREY MAE LESSNER,

Appellant
(Defendant),

v.

S-23-0238

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Sweetwater County*
*The Honorable Richard L. Lavery, Judge*

*Representing Appellant:*
Diane M. Lozano, State Public Defender; Kirk A. Morgan, Chief Appellate Counsel. Argument by Kirk A. Morgan.

*Representing Appellee:*
Bridget L. Hill, Wyoming Attorney General; Jenny L. Craig, Deputy Attorney General; Kristen R. Jones, Senior Assistant Attorney General; John J. Woykovsky, Senior Assistant Attorney General. Argument by John J. Woykovsky.

*Before FOX, C.J., and BOOMGAARDEN, GRAY, FENN, and JAROSH, JJ.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**BOOMGAARDEN, Justice.**

[¶1]     After a bench trial, Audrey Mae Lessner was convicted of felony child abuse under Wyo. Stat. Ann. § 6-2-503(b)(i) (2023).  Ms. Lessner appeals her conviction, arguing the district court abused its discretion when it denied her motion to continue the morning of trial.  She also argues the State presented insufficient evidence to prove she did not engage in reasonable corporal punishment.  We affirm.

## *ISSUES*

[¶2]     Ms. Lessner raises two issues we rephrase as:

    I.      Did the district court abuse its discretion when it denied Ms. Lessner's motion to continue?

    II.     Did the State present sufficient evidence to demonstrate FF's physical injury was not the result of reasonable corporal punishment?

## *FACTS*

[¶3]     On June 18, 2022, Ms. Lessner agreed to babysit FF, an eleven-year-old.  During the evening, Ms. Lessner took FF and her own minor child to the park and grocery store.  While at the store, Ms. Lessner purchased food for dinner.  After the dinner was prepared, Ms. Lessner and FF watched a movie while they ate.  FF proceeded to pick at her meal rather than eating it.  Ms. Lessner told FF to go sit at the dining room table and finish the meal.

[¶4]     Approximately fifteen minutes later, FF called Ms. Lessner into the dining room and asked about taking a shower.  FF told Ms. Lessner she finished eating the food and it only took so long because she was distracted by the movie.  Ms. Lessner excused FF to take a shower.  In the meantime, Ms. Lessner felt something was off and inspected the area.  She eventually found the food spilling out underneath the table.  When FF got out of the shower, Ms. Lessner confronted her about lying.  Ms. Lessner told FF that was the third time she lied that day and had been previously warned if she continued to lie, she would be spanked.  Ms. Lesser then told FF to go wait in the bedroom.

[¶5]     Ms. Lessner proceeded to look up Wyoming's corporal punishment laws on her computer and prayed to calm down because she was frustrated with FF's dishonesty.  Ms. Lessner then got a belt and folded it twice to make certain she had control of the buckle.  She spanked FF with the belt eleven times around the buttocks area.

[¶6]     After Ms. Lessner spanked FF, she had FF gather her belongings and took her to her grandparents' house. FF's grandfather answered the door when Ms. Lessner arrived. She told him to take the child because "she's lied to me for the last time." Once inside, FF complained of her leg hurting. The grandfather saw some red marks on her hip but did not have any initial concerns. However, the next morning FF's bruises became more apparent down the side of her leg and worsened as the day progressed. FF's grandmother called the police to report the incident.

[¶7]     Later in the day, FF's father brought her into the Green River Police Department to meet with investigating officers. The officers observed several bruises on FF, primarily on her right thigh, and took pictures of the injuries. The next morning, FF's stepfather took her to the hospital where a nurse examined her bruises and also took pictures. Two days later, a detective and assisting officers went to Ms. Lessner's home with a search warrant. Ms. Lessner led the detective to a bedroom and pointed out the belt she used on FF. The detective picked up the belt and Ms. Lessner grabbed it from the officer's hand to demonstrate how she used it.

[¶8]     On July 21, the State charged Ms. Lessner with felony child abuse. She was arrested several days later and appointed counsel. In February 2023, Ms. Lessner filed a motion seeking to remove her counsel and represent herself. The district court held a hearing on the motion. The court advised Ms. Lessner about the risks of self-representation. She chose to represent herself. The court granted her request and allowed the appointed counsel to withdraw. The court then inquired about discovery. The State acknowledged discovery had been completed. Ms. Lessner's previously appointed counsel stated he had all the State's discovery and provided it to Ms. Lessner on a flash drive. Counsel also stated if Ms. Lessner found anything was lacking in the discovery, he could provide it again.

[¶9]     In April, Ms. Lessner filed a motion for extension of time, asserting the prosecution refused to help her obtain information to file a subpoena with Verizon Wireless. The court held a hearing on the motion June 13. At the beginning of the hearing, Ms. Lessner informed the court she no longer needed an extension and was ready for trial the following Monday. The court asked the State if it had provided Ms. Lessner with the exhibits. The State asserted it had attempted to provide her with the exhibits that morning, but Ms. Lessner had not picked up everything. She did not pick up an edited version of the body camera footage obtained when law enforcement executed the search warrant. Ms. Lessner claimed the State failed to hand it to her. The State said Ms. Lessner could pick up the edited footage from its office. Ms. Lessner later acknowledged she received an audio recording of the video but not the "actual video." The State responded, asserting it provided that video to Ms. Lessner's counsel earlier in the case and that it could provide Ms. Lessner another copy of the body camera video. The State also noted it would give Ms. Lessner receipts of the discovery provided to her prior counsel so she could make sure she had everything on the list.

2

[¶10] On Friday, June 16, Ms. Lessner filed a motion for emergency hearing. She asserted the State "modified the videos and did not include all discovery for the opposing party which is unethical conduct" and that she was not ready to proceed because the State was denying some discovery. On Monday, the first day of the bench trial, the district court heard arguments on the motion from both parties. Ms. Lessner argued she did not receive the "full footage" from the detective's body camera until noon on June 16, she was missing several phone calls between her and FF's mother, and she did not have the body camera footage from the other officers. The State argued that it notified her the detective's body camera footage was ready to be picked up by June 14, but she did not do so until June 16. It also argued Ms. Lessner had been given the discovery receipts but never asked for anything from that list. The court denied Ms. Lessner's motion without explanation and proceeded with the bench trial.

[¶11] During the two-day bench trial, the State offered multiple exhibits, including photographs of FF's injuries and the edited versions of the search warrant body camera footage. The State called several witnesses, including FF, FF's grandfather, the detective who executed the search warrant, the nurse who examined FF, and FF's mother and stepfather. Ms. Lessner recalled several of the State's witnesses and provided her own testimony. During her testimony, Ms. Lessner admitted she struck FF with a belt eleven times, once for each year FF was old, which was similar to how Ms. Lessner was brought up. She explained the spanking was to discipline FF for her dishonesty. She also testified the spanking was necessary because other forms of discipline had not worked. She testified she only hit FF on the buttocks, and she did not miss. On cross-examination, the State asked Ms. Lessner why she used the belt rather than her hand to spank FF. Ms. Lessner responded: "Because I'm not breaking blood vessels in my hand over an 11-year-old child."

[¶12] After hearing closing arguments, the district court found Ms. Lessner guilty of felony child abuse. The court later sentenced Ms. Lessner to five years of supervised probation with an underlying sentence of five to seven years of incarceration.

## DISCUSSION

### I. The district court did not abuse its discretion when it denied Ms. Lessner's motion to continue.

[¶13] The district court's grant or denial of a motion to continue is a discretionary ruling. *Vargas v. State*, 2014 WY 53, ¶ 14, 322 P.3d 1282, 1285 (Wyo. 2014) (quoting *Grady v. State*, 2008 WY 144, ¶ 18, 197 P.3d 722, 729 (Wyo. 2008)). We will not disturb that ruling unless the party challenging it can show a clear abuse of discretion resulting in manifest injustice. *Id.* (citation omitted); *Sincock v. State*, 2003 WY 115, ¶ 25, 76 P.3d 323, 333–34 (Wyo. 2003) (citation omitted). "[W]hether the district court abused its discretion in refusing to grant a continuance is highly dependent on the facts and circumstances of the

3

individual case." *Vargas*, 2014 WY 53, ¶ 14, 322 P.3d at 1285–86 (citation omitted). Our primary consideration on review is whether the court's decision was reasonable. *Id.* (citation omitted); *Sincock*, 2003 WY 115, ¶ 25, 76 P.3d at 333 ("The ultimate question in determining whether an abuse of discretion has occurred is whether the trial court reasonably could have concluded as it did." (citation omitted)).

[¶14]   Ms. Lessner argues the district court abused its discretion when it denied her motion because the State or her prior counsel failed to timely provide her with the discovery necessary to defend herself. She alludes to both prosecutorial misconduct and ineffective assistance of counsel. As we discuss below, in considering the facts and circumstances of this case, the district court acted reasonably when it denied Ms. Lessner's request for a continuance.

[¶15]   The record demonstrates Ms. Lessner had been provided with the discovery well in advance of trial and had the means to timely obtain any discovery she felt was missing. For instance, in February 2023, the State listed each of its exhibits in a pretrial memorandum. Ms. Lessner's counsel raised no objection. When Ms. Lessner sought to disqualify her counsel, counsel affirmed with the district court that the State had provided him with "all the discovery" and he handed that discovery over to Ms. Lessner on a flash drive. Counsel also stated he could provide the discovery to Ms. Lessner again if she felt anything was missing. Further, at the June 13 hearing, Ms. Lessner acknowledged she was ready for trial before expressing confusion over whether she obtained the search warrant body camera footage and the State's edited exhibits of that footage. She noted she had two videos, including the video of her arrest, and audio recordings corresponding to the body camera exhibits. The State informed her that she could acquire copies of the body camera exhibits at its office. On the morning of trial, Ms. Lessner sought to continue the matter claiming again she was missing discovery from the State even though she admitted the State had provided her with the body camera exhibits. The district court could reasonably conclude under these circumstances a continuance was not merited. Ms. Lessner has thus failed to show a clear abuse of discretion. *See Vargas*, 2014 WY 53, ¶ 14, 322 P.3d at 1285 (citation omitted).

[¶16]   Ms. Lessner also fails to demonstrate how the district court's denial of her motion resulted in manifest injustice. Ms. Lessner claims the State delayed in producing the body camera exhibits essential to her case and a continuance was necessary to prepare a defense. She does not describe how her defense would have been different had she acquired the body camera exhibits sooner. At the least, Ms. Lessner had awareness of these exhibits several months in advance, possessed audio recordings of the exhibits prior to the June 13 hearing, and had affirmatively acquired copies of the exhibits several days before trial. Additionally, Ms. Lessner's testimony corroborated the material information contained on the body camera exhibits. We conclude the district court's denial of Ms. Lessner's motion to continue was not an abuse of discretion resulting in manifest injustice. *See Sincock*,

4

2003 WY 115, ¶¶ 25, 32, 76 P.3d at 334, 336; *Vargas*, 2014 WY 53, ¶ 14, 322 P.3d at 1285–86 (citation omitted).

## II.    *The State presented sufficient evidence to demonstrate FF's physical injury was not the result of reasonable corporal punishment.*

[¶17]   We apply the same standards to review the sufficiency of the evidence after a bench trial as we do a jury trial.  *Gore v. State*, 2019 WY 110, ¶ 9, 450 P.3d 1251, 1253 (Wyo. 2019) (citation omitted).

> We examine and accept as true the State's evidence and all reasonable inferences which can be drawn from it.  We do not consider conflicting evidence presented by the defendant.  We do not substitute our judgment for that of the [trier of fact]; rather, we determine whether [the trier of fact] could have reasonably concluded each of the elements of the crime was proven beyond a reasonable doubt.  This standard applies whether the supporting evidence is direct or circumstantial.

*Id.* (quoting *Mathewson v. State*, 2018 WY 81, ¶¶ 15–16, 431 P.3d 1121, 1124 (Wyo. 2018)).

[¶18]   Wyo. Stat. Ann. § 6-2-503(b)(i) states:

> (b) A person is guilty of child abuse, a felony punishable by imprisonment for not more than ten (10) years, if a person responsible for a child's welfare as defined in W.S. 14-3-202(a)(i) intentionally or recklessly inflicts upon a child under the age of eighteen (18) years:
>
> (i) Physical injury as defined in W.S. 14-3-202(a)(ii)(B), excluding reasonable corporal punishment[.]

[¶19]   Wyo. Stat. Ann. § 14-3-202(a)(ii)(B) defines "physical injury" as "any harm to a child including but not limited to disfigurement, impairment of any bodily organ, **skin bruising if greater in magnitude than minor bruising associated with reasonable corporal punishment**, bleeding, burns, fracture of any bone, subdural hematoma or substantial malnutrition[.]" (emphasis added).  Under this statute:

> [A] person responsible for a child's welfare is not guilty of child abuse if the physical injury results from reasonable corporal punishment.  In other words, because reasonable corporal punishment is a listed element, the State must prove

5

> beyond a reasonable doubt that the physical injury is not the result of discipline a parent is permitted to administer.

*Anderson v. State*, 2014 WY 88, ¶ 15, 330 P.3d 256, 260–61 (Wyo. 2014).

[¶20]   Ms. Lessner contends her calculated decision to spank FF with a belt eleven times constituted reasonable corporal punishment, and the State presented insufficient evidence to prove otherwise.  Whether Ms. Lessner administered reasonable corporal punishment is for the trier of fact—here the district court—to decide.  *See Anderson*, 2014 WY 88, ¶ 26, 330 P.3d at 263 (citations omitted); *see also Keser v. State*, 706 P.2d 263, 270 (Wyo. 1985) ("Whether in any case punishment exceeded the bounds referred to is a question of fact for the jury, and they may determine it from the injuries inflicted." (quoting *State v. Spiegel*, 270 P. 1064 (Wyo. 1928)).  The court expressly found Ms. Lessner's actions against FF to be unreasonable based on: (1) the way she demonstrated she had used the belt; (2) the fact she used the belt to avoid injuring her hand; (3) the number of times she hit FF; (4) the nature of FF's bruising; and (5) the fact she only initiated such a punishment because FF lied about food.

[¶21]   We do not substitute our judgment for that of the district court, we instead consider whether the State presented sufficient evidence for the district court to reasonably conclude as it did.  *Anderson*, 2014 WY 88, ¶ 23, 330 P.3d at 263 (citation omitted); *Gore*, 2019 WY 110, ¶ 9, 450 P.3d at 1253 (citation omitted).  Accepting the State's evidence as true, and drawing all reasonable inferences from that evidence, the record contains sufficient evidence for the district court to conclude Ms. Lessner did not administer reasonable corporal punishment when she hit FF with a belt eleven times.  *Anderson*, 2014 WY 88, ¶ 23, 330 P.3d at 263 (citations omitted).  The record contains testimony from FF's grandfather, the nurse who examined FF, and the investigating officer who each observed significant bruising on FF's thigh.  The State admitted multiple photographs of the bruising.  The State also admitted the body camera footage from the execution of the search warrant wherein Ms. Lessner admitted to hitting the child with a belt, identified the belt used, and demonstrated how she used it.

[¶22]   Ms. Lessner's testimony further supports a reasonable inference that she did not administer reasonable corporal punishment.  She testified FF had lied to her about eating the food which constituted the third time the child had lied to her that day.  Ms. Lessner testified to being angry and telling FF she would receive a spanking for her dishonesty.  She testified that after taking time to calm down, she decided to spank FF with a belt.  She used the belt for the spanking to avoid hurting her hand.  She explained she had FF bend over the bed, would spank FF three times with the belt, rest because it hurt her arm, and then repeat until she hit the child eleven times.  She also testified that during the second set of three hits, FF flew backwards off the bed onto the floor and asked Ms. Lessner to stop.  Ms. Lessner responded that she still had five more hits to go and had FF bend back over the bed.

[¶23] Viewing the evidence in a light most favorable to the State, Ms. Lessner was angry and responded excessively to FF lying about food as reflected by the number of times she spanked FF, the fact she used a belt to avoid injuring herself, and her refusal to stop spanking FF other than to rest her arm. Ms. Lessner's excessive actions "did not represent a method of correction or a reasonable means of obtaining the child's attention and compliance, but rather represented an adult who had lost control of [her] own responses." *Hultberg v. State*, 2024 WY 59, ¶ 21, —P.3d—, — (Wyo. 2024) (quoting *State v. Treadway*, 103 A.3d 1026, 1030 (Me. 2014). The district court had sufficient evidence to conclude FF's bruising was in greater magnitude than minor bruising associated with reasonable corporal punishment and that the State proved her physical injury was not the result of reasonable corporal punishment. *See Gore*, 2019 WY 110, ¶ 9, 450 P.3d at 1253 (citation omitted); *Anderson*, 2014 WY 88, ¶¶ 25–26, 330 P.3d at 263 (citations omitted).

## *CONCLUSION*

[¶24] The district court did not abuse its discretion when it denied Ms. Lessner's motion to continue. The State presented sufficient evidence during the bench trial to support Ms. Lessner's child abuse conviction. Affirmed.